Sneed, J.,
delivered the opinion of the court. '
This is a petition for writs of certiorari and super-sedeas. It was dismissed, on motion, in the circuit court.
The petition alleges that on the 8th of December, 1860, Pratt recovered a judgment against one Porter, *232 before a justice of the peace of Gibson County, upon a note for $105.63, given by Partee to Pratt on the 4th of December, 1860, and due one day after date; that execution has been h ued against the petitioner as stayor; that the judgment shows that the petitioner became stayor per order, which petitioner denies. He states that he did not become stayor of the said judgment, and that he is not bound thereon.
A paper was sent up with the justice’s papers, under the fiat, which purports to be signed by the petitioner, and in terms authorizes the justice to enter the name of the petitioner as stayor of said judgment.
This is the first ground assumed in the petition.
It is contended on behalf of the plaintiff in the judgment, that the denial of the authority to stay is not so clear and specific as to amount, in effect, to a plea of non est faotum, and to entitle the petitioner to the writ; and that the stay order itself, brought up with the papers, negatives the averments of the petition.
The denial of the alleged order is in the following words: “Your petitioner’s name appears opposite said judgment as stayor on the judgment by a ‘per order.’ Petitioner states that he is advised that he is not bound as stayor upon said judgment, because no one had authority to put his name thereto as stayor, and the act of said party so doing was unauthorized and void, and not binding upon the petitioner.”
The petition is sworn to. The alleged stay order is addressed to the justice who rendered the judgment, *233 and was sent up with the papers in the case without any certificate or other mark of authenticity upon it. It is in''"the following words:
“Mr. J. T. Swindle, Esq.: You will please enter my name as stayor for B. L. Partee in favor of G. L. Pratt, for $105.63, returned by John Martin.
“10th Dec., 1860. C. N. Wade.”
It may be true that this loose paper is not one of the “justice’s papers” which, in the sense of our rulings, “may be looked to” in order to negative the allegations of the petitioner; but the question is, whether the denial „ of its execution, as made in the petition, is sufficient.
It is not necessary that the petitioner, in a motion to dismiss, should prove the statements of the petition to be true. The simple question for the court is, Are the grounds assumed in the petition sufficient to entitle the petitioner to the writ? If so, the case will be retained, and upon its trial the proof will be heard.
A positive and unequivocal denial of the execution of the order in the present case would have thrown the burden of proving its execution upon the plaintiff in the judgment. The sworn petition in such a case, denying the execution of the order, is to be taken as a plea of non est faetim, and therefore it must have the specific certainty and positiveness of such a plea. It must be so clear, definite, and unambiguous, that an indictment for perjury may be predicated upon it, if it be false.
Now, whatever the petitioner intended by the terms *234 of this petition, he does not deny writing the order. He does not say that it is not his act and deed. On the part of the plaintiff in the judgment, the motion to dismiss, like a demurrer, admits the allegations of the petition, but disputes- their sufficiency.
Among the admissions of the motion is that of the stay’s having been entered upon what purported to be the order of the petitioner. If the petitioner would avoid the consequences, be must deny the execution of any such order. But his statement is not that said order is not bis act and deed. It is only that he is advised that he is not bound as stayor upon said judgment, because no one had' "authority to put his name thereto as stayor, and the act of said party so doing was unauthorized and void, and not binding upon petitioner. This is the statement of an opinion, — a legal conclusion, not the allegation of a fact. If false, it could not be a valid foundation for an indictment for perjury. We are of opinion, therefore, that the allegations of the petition on this point are not sufficient.
The next ground assumed in the petition is, that the judgment of the justice is made to carry interest at the rate of ten per cent per annum, whereas, six per cent interest upon judgments is the rate fixed by the general law.
A majority of the judges are of the opinion that the judgment cannot lawfully bear more than six per cent interest. That though the contract was to pay the borrowed money with ten per cent interest until paid, under the conventional interest law of I860, yet *235 the moment it was merged in a judgment, the question of interest must be governed by the general law, which awards six per cent interest upon all judgments; but the excess of interest, if there were nothing else in the case, might be eliminated and the proper judgment rendered here.
The petition further alleges, however, that an execution had been issued on this judgment on the 10th of January, 1862, at a time when the money could have been made out of the estate of the principal debtor, and that this execution has never been returned; and it is insisted that the justice had no authority to .issue the execution now complained of.
There is nothing among the papers returned by the justice to negative this allegation of the petition.
This objection to the execution, in the opinion of a majority of the court, would not be fatal, the statute upon this subject being directory merely.
The judgment will be affirmed.
After delivering the opinion of the court, Sneed, J., proceeded as follows:
The writer of the foregoing does not concur in the opinion of the majority of the judges upon the question of interest.
The note sued on is in form as follows:
“$105.63. One day after date I promise to pay G. L. Pratt one hundred and five dollars and sixty-three cents, borrowed money, at ten per cent interest from the date until paid.”
*236 It will be observed that the contract is under the conventional interest act of 21st February, 1860, which provides as follows: “Whenever any person shall contract for the loan of money, it shall and may be lawful for the lender to receive a rate of interest on the same, up to the time when payment is made, not to exceed ten per cent per annum.” The uniform rate of interest upon ordinary judgments, and upon contracts bad long prior to this act been fixed at six per cent, and it is insisted that interest being unknown at common law, and being the creation of the statute, we can look alone to the statute for the interest on a judgment. On the other hand, it is urged that the imperative terms of the statute are, that the borrowed money shall bear ten per cent interest up to the time it shall be paid, which is the specific obligation of this contract; and that a judgment is no payment, but a mere merger of one security into another.
It will be observed that the plaintiff in this case loaned his money to the defendant on the 4th of December, 1860, and took his judgment four days thereafter, doubtless with the understanding that the security should be a stayed judgment, bearing the ten per cent interest as the consideration for the loan. The object of the conventional interest law was the same as that of an act of the British Parliament •during the present reign, 17 and 18 Viet., ch. 90, by which all usury laws were repealed; viz., to invite and encourage the free circulation of money, and thereby to cheapen its price as a commodity in the *237 market. It was thought that this effect would result from the allowance of a greater per cent for money loaned than the uniform rate of interest. And to secure the lender, it was providéd that the borrower should pay ten per cent interest up to the time that the borrowed money was returned. The act of 1860 is silent as to the interest upon such contracts after judgment rendered, entrusting the question, doubtless,, to the courts, which have no more power to apply a law to the impairment of the obligation of a contract than the Legislature has to enact such a law. To make sure, however, that the spirit of such contracts should be carried out, the act of 1870, ch. 69, providing for the same rate per cent, provides and that the judgments on such contracts shall also bear the rate of interest thus contracted for. I • am of opinion that the judgment in such cases, irrespectively of the particular act under which the contract was made, must follow the contract. Otherwise it would seem that the very object of the law, which is to secure to the lender ten per cent interest until paid, would be defeated. A judgment is certainly not a payment, and if a judgment is to defeat the imperative terms of the law and the obligation of the contract itself, the borrower at ten per cent could in an hour afterwards, by some cunning feint of removal or fraudulent transfer of property, drive the lender to the necessity of action and judgment, and thus defeat his recovery of the interest which induced the loan.
The general law as to interest on judgments • was enacted to conform to the provision for interest on *238 ordinary contracts, and it was intended merely to merge the obligation of the specific contract into the higher security. Its analogies may well apply to cases like that in judgment, so that the judgment upon the contract should interpret the terms and . conditions of the contract, and not alter or modify them.
A judgment is but a conclusion of law upon facts found, or admitted by the parties. Tidd’s Pr., 930.
A judgment should be but the interpretation of the contract of the parties, combined with the authority for its enforcement. If a party agree lawfully to pay back borrowed money, with ten per cent interest until it is actually returned to the lender, then no general law as to interest upon judgments at é less rate can override the contract, because, under the Constitution, the obligation of the contract is superior to the law. The contract in this case is not to pay ten per cent up to the date of the judgment, but to pay that per cent up to the. time of the payment, and the judgment simply interprets the contract, and I can see no sound reason why this should not be so.
I hold that the judgment in this case pursues the contract, and that the contract being legal, this is a good and valid judgment.